IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DANIEL J. REPOSH,                    :
                                     :
          Plaintiff                  :
                                     :
      v.                             :    CIVIL NO. 3:CV-12-2534
                                     :
CATHERINE SELLERS, ET AL.,           :    (Judge Conaboy)
                                     :
          Defendants                 :

_____

**MEMORANDUM**
**Background**

Daniel J. Reposh initiated this civil rights action pursuant to 42 U.S.C. § 1983 regarding his prior confinement in the Monroe County, Pennsylvania Correctional Facility while proceeding pro se. Following service of the Original Complaint, counsel entered an appearance on behalf of the Plaintiff. See Doc. 33. By Order dated November 22, 2013, Plaintiff's request to file a counseled Amended Complaint was granted. An Amended Complaint (Doc. 37) was thereafter submitted.

Named as Defendants therein are Monroe County, Pennsylvania; and the following officials of the Monroe County Correctional Facility: Warden Donna Asure; Deputy Warden for Security David Kessling; Sergeant Philip Diliberto; Correctional Officers Catherine Sellers, Russell Doyle, and James Howard (hereinafter the County Defendants).

Reposh is also proceeding against PrimeCare Medical Inc. and four (4) PrimeCare employees:  Licensed Practical Nurses (LPN) Chet Huntley; Wendy Johnson; Physician's Assistant (PA) Jennifer Mroz; as well as Doctor Deborah Wilson (hereinafter PrimeCare

Defendants).  Presently pending is a motion to dismiss the Amended Complaint filed by the PrimeCare Defendants.  See Doc. 38.  The opposed motion is ripe for consideration.

With respect to the PrimeCare Defendants, the Amended Complaint asserts that while confined in the Monroe County Prison, Plaintiff was taken to the prison's medical unit "where he was tested daily and treated for his diabetes."  Doc. 38, ¶ 26.  While housed in the RHU on October 4, 2012, Plaintiff was placed in handcuffs and taken from his cell by Defendants Sellers and Doyle for the purpose of being escorted from the RHU to the prison's medical department for his daily diabetes testing.  Reposh was wearing prison issued sandals, his hands were handcuffed in front of him and the escorting officers were physically holding his arms. Plaintiff adds that he complied with the instructions of the escorting officers.

Plaintiff asserts that despite his full cooperation, he was pulled and dragged down the steps of the RHU during the escort. See id. at ¶ 27.  After the diabetes testing and treatment was completed, Plaintiff was escorted back up the steps to the RHU by Sellers and Doyle.  It is alleged that during this escort Sellers again dragged Plaintiff along the steps.  See id. at ¶ 33. As a result "Reposh's uncovered toe struck the steps with such force as to break it."  Id. at ¶ 36.  Plaintiff allegedly reported that injury to Defendant Howard and requested medical attention.

Approximately an hour and a half later, LPN Huntley visited Reposh as part of the evening medical rounds.  Huntley purportedly told Plaintiff that someone would return after completion of the evening rounds to inspect the injury.  It is asserted that no one

from the medical department arrived that evening to inspect Reposh's injury.

The next day, October 5, 2012, Plaintiff again requested medical attention and was told that he would be called to the prison infirmary.  After still not being examined by a doctor or any medical personnel, Plaintiff filed a written complaint that evening.  The Amended Complaint does acknowledge that Reposh received an ice pack and Motrin from the on duty nurse on October 5, 2012 and was told that he had been scheduled to a physician or a PA on Monday, October 8, 2012.  See id. at ¶ 45.

After spending the weekend without being examined, Plaintiff states that was told by nurses during morning and afternoon rounds that his name was on the list to be examined.  When the prisoner had still had not been seen, he filed a second administrative complaint on October 9, 2012, by this time his foot "was swollen, red, and bruised."  Id. at ¶ 48.  It is next alleged that on October 10, 2012, nearly a week after being injured Plaintiff was given a cursory exam by PA Mroz.  Specifically, Reposh contends that Mroz merely viewed Plaintiff's foot through an RHU cell window and ordered antibiotics and x-rays because the foot appeared to be infected.

Plaintiff was told by Nurse Albertson that the results of the x-rays were received by the prison medical staff on October 12, 2012 but that the inmate would have to wait until Monday, October 15, 2012 to get the results from the doctor.[1]  After filing a third

---

1.  Plaintiff notes that he overheard a conversation betwen Huntley and Howard on October 12, 2012 which led him to believe that he likely had a broken toe.  He claims that this constituted an
(continued...)

complaint on October 15, 2012, Reposh finally saw the x-ray report which indicated that he had a broken toe on October 16, 2012.

On October 17, 2012 Plaintiff was again seen by PA Mroz through his RHU cell window, was told that his infection was clearing up, an appointment with a specialist had been cancelled, and there was nothing that could be done for him.  See id. ¶¶ 61-62.  His request for a second opinion and request to be seen by a specialist who would take into consideration his diabetic condition were denied.

After being released from confinement, Plaintiff sought independent medical review which culminated in surgery being performed on Plaintiff's foot on September 19, 2013.  This surgical procedure resulted in the removal of a portion of the bone.  Reposh contends that he still suffers chronic pain and limited movement. The Amended Complaint concludes that the actions of the PrimeCare Defendants detailed above constitutes deliberate indifference to a serious medical need.

## **Discussion**

PrimeCare Defendants claim entitlement to entry of dismissal on the grounds that there is no basis for liability against PrimeCare; Johnson and Wilson lacked personal involvement in any of the alleged unconstitutional actions; and Plaintiff cannot demonstrate deliberate indifference to a serious medical need with respect to the individual defendants.[2]  See Doc. 44, p. 5.

---

1.  (...continued)
improper disclosure of his personal medical information.

2.  The motion to dismiss contains a one sentence averment noting that plaintiff did not file a certificate of merit.  However, since
(continued...)

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 1950.

---

2.  (...continued)
the supporting brief does not raise any such argument for dismissal it will be deemed withdrawn.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).  Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Personal Involvement**

The Moving Defendants initially assert that Defendant PrimeCare cannot be held liable for any actions attributed to its employees under a theory of respondeat superior.  See Doc. 44, p. 9.  Moreover, since there is no indication that Plaintiff was harmed as the result of any deficiencies in PrimeCare policies or provisions, said Defendant is entitled to entry of dismissal.  See id.  In a similar argument, they contend that because there are no allegations of  personal involvement set forth against Dr. Wilson and Nurse Johnson in the Amended Complaint, those two Defendants are likewise entitled to entry of dismissal.

With respect to Defendant PrimeCare, the Plaintiff relying on Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003), asserts that the motion to dismiss should be denied because said Defendant failed to have an adequate policy in place

to ensure that a diabetic prisoner such as Reposh would be provided with appropriate care.  <u>See</u> Doc. 45, p. 4.

A plaintiff, in order to state an actionable civil rights claim under § 1983, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of <u>respondeat</u> <u>superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d Cir. 1976).  As explained in <u>Rode</u>:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

<u>Rode</u>, 845 F.2d at 1207.

Under the standards developed in <u>Rode</u>, any attempt by Reposh to establish liability against PrimeCare solely on the basis that it is the employer of Defendants Huntley, Johnson, Mroz, and Wilson

is insufficient for purposes of alleging personal involvement in constitutional misconduct.

Second, in order to establish a viable § 1983 claim against a private corporate entity such as PrimeCare, it must be asserted that said defendant had a policy, practice, or custom which caused injury to the plaintiff. See Adonai-Adoni v. King, 2009 WL 890683 * 2 (E.D. Pa. March 31, 2009) (a private health care provider can only be liable under § 1983 if claim rests upon some policy, practice or custom); see also Riddick v. Modery, 250 Fed. Appx. 482, 483-84 (3d Cir. 2007).

In Natale, the Third Circuit Court of Appeals addressed a delyaed treatment claim by a diabetic pre-trial detainee who entered confinement with a medical directive stating that he must have insulin while incarcerated.  The Court of Appeals stated liability could exist against an entity such as PrimeCare if it "turned a blind eye to an obviously inadequate practice." Natale, 318 F. 3d at 584

Based upon a careful review of the Amended Complaint, Reposh makes no assertion that PrimeCare enacted any policy, custom, or practice which resulted in a violation of his constitutional rights.  Second, the Amended Complaint concedes that plaintiff underwent daily testing and treatment for his diabetes. Unlike Natale there is no basis for a claim that PrimeCare failed to create a policy to provided for the necessary treatment of diabetic prisoners.  This is simply not a case where there was no procedure in place for the treatment of a chronically ill prisoner such as a diabetic who may require immediate and constant medication for a serious medical condition.  Rather, this case concerns a prisoner's

claim that there was failure to timely and adequately treat an injury but the Amended Complaint does not point to any policy or practice that caused that failure. See Stankowski v. Farley, 487 F. Supp.2d 543, 554-555 (M.D. Pa. 2007). As such, there is no discernible basis for liability against PrimeCare.

Accordingly, PrimeCare's request for entry of dismissal will be granted. See Carpenter v. Kloptoski, 2010 WL 891825 * 8 (M.D. Pa. March 10, 2010)(§ 1983 claim against private medical service solely on the basis that it was responsible for providing health care is subject to dismissal).

It is similarly argued that there are no assertions that either Doctor Wilson or LPN Johnson had any direct involvement in Plaintiff's care. Plaintiff counters that Doctor Wilson was an authorized decision maker and failed to ensure that proper policies were in place. Reposh similarly adds that Johnson was responsible for medical policies and as such also has liability.[3] See Doc. 45, p. 9.

There are no allegations set forth in the Amended Complaint which show that either Wilson or Johnson were involved in Plaintiff's medical care for his toe injury, were aware of said injury, or made any medical decisions with respect to the treatment of that problem. The Amended Complaint also contains no claim that the purported failure of members of the prison medical staff to timely and adequately treat Inmate Reposh's injury was the result of any policy or custom created by either Doctor Wilson or LPN

---

3. This assertion is somewhat suspect as it describes Johnson as being a treating physician. PrimeCare Defendants identify Johnson as being an LPN. See Doc. 44, p. 2.

Johnson.  Consequently, based upon an application of <u>Rode</u>, this Court agrees that PrimeCare Defendants Wilson and Johnson are also entitled to entry of dismissal on the basis of lack of personal involvement.

## **Deliberate Indifference**

The Moving Defendants next assert that there is no basis for a deliberate indifference claim against Huntley because Reposh received care for his injury after Nurse Huntley was notified.  <u>See</u> Doc. 44, p. 8.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)).  In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.  <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 235-36 (3d Cir. 2004); <u>Natale v. Camden Cty. Correctional Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).  In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). <u>Monmouth Cty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987); <u>West v. Keve</u>, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Mines v. Levi</u>, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting <u>Colburn</u>, 946 F.2d at 1023); <u>Monmouth Cty. Corr. Inst.</u>

Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).  It is noted that the PrimeCare Defendants' pending motion  does not argue that Reposh has failed to satisfy the serious medical need requirement.

It is the conclusion of this Court, at this juncture in the proceedings, that the alleged toe injury suffered by the diabetic Plaintiff which is described as ultimately requiring surgery and causing chronic pain and limited mobility satisfies the serious medical need requirement.

Under the subjective deliberate indifference component of Estelle, the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate treatment results simply from an error in

11

medical judgment, there is no constitutional violation.  <u>See</u> <u>id</u>.
However, where a failure or delay in providing prescribed treatment
is deliberate and motivated by non-medical factors, a
constitutional claim may be presented.  <u>See</u> <u>id</u>.; <u>Ordonez v. Yost</u>,
289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is
proven if necessary medical treatment is delayed for non-medical
reasons.").

        The Amended Complaint alleges that there was a significant
delay between the time that Huntley was notified of Plaintiff's
injury and the initial provision of medical attention.  This Court
agrees that a mere delay does not always constituted deliberate
indifference.  However, since Plaintiff was visited by Huntley
during medication rounds that Defendant was aware that the prisoner
suffered from diabetes.  Therefore, being a medical professional
Huntley was arguably aware that Reposh's need for prompt medical
care for a wound was greater than that of most other prisoners.
More importantly, this Court has not yet been provided with any
facts as to why there was a delay in treatment being initially
afforded to the inmate.  As such, this Court is satisfied that a
claim of deliberate indifference sufficient to withstand scrutiny
under Rule 12(b)(6) has been stated against LPN Huntley and the
request for dismissal in favor of that Defendant will be denied.

        With respect to Defendant Mroz it is alleged that she
initially saw Plaintiff approximately one (1) week after his injury
and merely viewed his foot through a RHU cell window.  It is
acknowledged that Mroz ordered antibiotics and x-rays because she
concluded that the foot appeared to be infected.  There have not
been facts presented to the Court establishing when Mroz first

became aware of Reposh's injury.  It is further alleged that on October 17, 2012 Plaintiff was again seen by PA Mroz through his RHU cell window, was told that his infection was clearing up, an appointment with a specialist had been cancelled, and there was nothing that could be done for him.

This Court agrees that any allegation that the examination and treatment provided by Mroz was negligent would not support a § 1983 claim of deliberate indifference under Estelle.  However, the allegations in the Amended Complaint with respect to a one week delay in Mroz's initial examination and the additional delay in a follow up visit after the taking of x-rays arguably supports a claim of deliberate indifference.  Moreover, this Court has not been provided with sufficient factual evidence as to the purported determination by Mroz that Plaintiff no longer needed to be seen by a specialist although it had previously decided that plaintiff should be referred for evaluation and treatment by a specialist. Clearly, if Mroz cancelled a previously scheduled appointment with a specialist for a non-medical reason a cognizable basis for a deliberate indifference claim would be established.  Based upon an application of Estelle to those considerations, the Amended Complaint to the extent that it seeks to establish liability against PA Mroz is sufficient at this stage in the proceeding to withstand the request for dismissal under Rule 12(b)(6).  An appropriate Order will enter.

S/Richard P. Conaboy_____
RICHARD P. CONABOY
United States District Judge

DATED: SEPTEMBER 19, 2014